**Mike WIDELL, Plaintiff–Appellant,**

v.

**Paul WOLF and Wolf Industries,
Defendants–Appellees.**

No. 94–2266.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 13, 1994.

Decided Dec. 30, 1994.

James B. Koch (argued), Lynn Weisberg, Gardiner, Koch & Hines, Chicago, IL, for plaintiff-appellant.

Joseph H. Spiegel (argued), Southfield, MI, for defendants-appellees.

Before CUDAHY, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Paul Wolf traded commodities on the Chicago Board of Trade using Mike Widell as a broker. In 1993 Wolf asserted that Widell had made trades for his account despite instructions to stop. Wolf demanded arbitration of the dispute and prevailed; the arbitrators awarded him $57,500. Widell argued to the arbitrators that Wolf knew or should have known of the trading, which was reflected in regular account statements, and should be barred from recovery by his failure to protest promptly after receiving the statements; Wolf replied that Widell had told him that the statements were erroneous and should be disregarded—indeed, should not even be opened. The arbitrators apparently accepted Wolf's version of the events.

Instead of paying, Widell asked a state court to set the award aside. Wolf removed under the diversity jurisdiction, and the district court promptly dismissed Widell's complaint, observing that none of the grounds for declining to enforce an arbitral award is

present. Widell sought leave to amend his complaint, but the district court ruled that the new complaint is as deficient as the first. Because the motion to amend the complaint was served within 10 days of the judgment, it also acted as a motion for reconsideration under Fed.R.Civ.P. 59(e). *Charles v. Daley*, 799 F.2d 343 (7th Cir.1986); *United States v. Deutsch*, 981 F.2d 299 (7th Cir.1992). Now Widell appeals, invoking the policy favoring liberal amendment. See *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Because the district court ruled that even the amended complaint fails to state a claim on which relief may be granted, this policy is hardly applicable. Why allow a futile amendment, only to dismiss in the next breath? See *Arazie v. Mullane*, 2 F.3d 1456, 1464 (7th Cir.1993). A few words about Widell's argument—that "public policy" bars enforcement of the award—show how bootless this suit is.

What public policy does the award offend? Surely damages to customers whose brokers trade without authorization do not violate any rule of law; protecting investors is itself an important public policy. Widell's lawyer names as the pertinent "policy" the customer's obligation, specified in the agreement, to read the statement and point out errors quickly. Cf. *Shappirio v. Goldberg*, 192 U.S. 232, 241–42, 24 S.Ct. 259, 261, 48 L.Ed. 419 (1904). He believes that the arbitrators should have decided against a customer who let improper trades accumulate. This, however, is a thinly disguised attempt to reargue the merits of the claim. "Courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Paperworkers Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).

The "public policy" defense to enforcement, on which Widell pins his case, applies only when some rule of law takes matters out of the parties' hands, and therefore out of the hands of their appointed agent, the arbitrator. The doctrine "derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act, and is further justified by the observation that the public's interests in con-

fining the scope of private agreements to which it is not a party will go unrepresented unless the judiciary takes account of those interests when it considers whether to enforce such agreements." *Misco*, 484 U.S. at 42, 108 S.Ct. at 373. See also *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183–84, 76 L.Ed.2d 298 (1983); *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603–04 (7th Cir.1994). Awarding damages to a customer who was lulled into not opening his statements does not lend a hand to an illegal act; it helps to defeat the broker's chicanery. And there is surely no need to protect the general public from arbitrators who think that brokers should pay for harm done. Whether the customer must protest within one day, one month, one year, or one lifetime, is a subject for contract and perhaps rules of the CFTC; it is not a subject on which contracts (and arbitral decisions construing them) should be set aside in the name of "public policy." The *real* public policy, announced in the Federal Arbitration Act, 9 U.S.C. §§ 1–16, is facilitating agreements to arbitrate by protecting awards from carping like Widell's.

Widell's brief does not cite *Misco* or any of the Supreme Court's many decisions spurning efforts to undermine the ability of arbitrators to resolve disputes quickly and finally. Over and over we have held that arbitrators' errors—even clear or gross errors, see *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir.1994)—do not authorize courts to annul awards. For many years the securities industry sought to move disputes from the courts to arbitral forums. Now that this has come to pass, see *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), it ill behooves a member of the industry to demand a second round in a judicial forum.

Arbitration is supposed to permit quick and cheap decision. Litigation like this defeats that purpose. We have remarked before that awards of attorneys' fees are readily available when one side refuses to accept an arbitrator's award and loses—for the American Rule requires each side to pay its fees in the first round of litigation but does

not compel it to pay for a second round attacking the outcome of the first. *Continental Can Co. v. Chicago Truck Drivers Pension Fund,* 921 F.2d 126 (7th Cir.1990); *Production & Maintenance Employees Local 504 v. Roadmaster Corp.,* 916 F.2d 1161 (7th Cir.1990); *PaineWebber Inc. v. Farnam,* 843 F.2d 1050 (7th Cir.1988); *Bailey v. Bicknell Minerals, Inc.,* 819 F.2d 690 (7th Cir.1987); *Hill v. Norfolk & Western Ry.,* 814 F.2d 1192, 1200–03 (7th Cir.1987); *Dreis & Krump Manufacturing Co. v. International Ass'n of Machinists,* 802 F.2d 247, 254–56 (7th Cir.1986). Widell's appeal was doomed, and accordingly it appears to be frivolous within the meaning of Fed.R.App.P. 38. See *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 938 (7th Cir.1989) (en banc). Widell has 15 days to show cause why we should not direct him to pay Wolf's legal fees and expenses as a sanction for taking a frivolous appeal. Within the same 15 days, Wolf should file a statement of the fees and expenses reasonably incurred in the defense of this appeal.

AFFIRMED.