**FLEXIBLE MANUFACTURING
SYSTEMS PTY. LTD.,
Plaintiff–Appellee,**

v.

**SUPER PRODUCTS CORPORATION,
Defendant–Appellant.**

No. 95–2160.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 27, 1995.

Decided June 7, 1996.

Thomas Streifender (submitted), Mark S. Diestelmeier, Von Briesen, Purtell & Roper, Milwaukee, WI, Robert E. Wrenn, Wrenn & Wille, Milwaukee, WI, for Plaintiff-Appellee.

Patrick B. Howell, Curtis A. Paulsen, Whyte Hirschboeck & Dudek, Milwaukee, WI, for Defendant-Appellant.

Before POSNER, Chief Judge, and BAUER and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

In this appeal, Super Products Corp. seeks to persuade this Court that an arbitration award in a commercial arbitration should be vacated because the arbitrators failed to enforce the agreement reached by the parties and manifestly disregarded the applicable law. We find that there was a valid arbitration agreement, and that Super Products has not carried its burden of showing the invalidity of the award by clear and convincing evidence. *See* Wis. Stat. § 788.10(1)(d), *De-Baker v. Shah*, 194 Wis.2d 104, 533 N.W.2d 464, 468 (1995). We therefore affirm.

The underlying facts are straightforward. On March 5, 1988, Super Products (a Wisconsin corporation) entered into a licensing agreement to provide Flexible Manufacturing Systems (an Australian company) with drawings and technical information for manufacturing industrial vacuum loading equipment. Shortly after the execution of the agreement, Flexible began to complain that Super Prod-

ucts was not providing the technology required by the agreement. The relationship degenerated on all sides, and on August 24, 1989 Flexible filed the underlying suit in this case in federal court, asserting diversity jurisdiction and claiming breach of contract and fraud in the inducement. On October 17, 1989, Super Products retaliated by sending Flexible notice of its intent to terminate the agreement.

Section 11 of the License Agreement contained a standard commercial arbitration clause. It provided as follows:

> In the event of there arising any difference of opinion between the parties or other dispute as to any of the matters provided for herein, the parties shall endeavor to settle the differences or dispute in an amicable manner through mutual consultation. In the event of such difference or dispute being incapable of resolution by such consultation, such dispute or difference shall be referred to and determined by the Commercial Arbitration Association in the United States and the governing law should be of the state of Wisconsin, or elsewhere as the parties may agree under the Commercial Arbitration Association of the U.S.A.

On February 11, 1991, the district court entered an order granting Super Products' motion to compel arbitration pursuant to Section 11. The order bifurcated the dispute into two parts: the breach of contract claims, which were to be submitted to arbitration, and the fraud in the inducement claims, which the court held in abeyance pending the outcome of the arbitration. (Because there is no entity known as the Commercial Arbitration Association in the United States, the court ordered the parties to arbitrate before the American Arbitration Association (AAA).)

On November 9, 1992, Flexible commenced arbitration before the AAA by filing a demand that set forth the breach of contract claims. Super Products responded with a counterclaim. The arbitration went forward before a three-person panel, which held a seventeen day evidentiary hearing. The panel heard testimony from sixteen witnesses, received over 400 exhibits, and heard full argument from both parties. On March 7, 1994, the panel issued an award of $2,000,000 to Flexible on its claim, $20,395 to Super Products, and costs to Flexible of $28,000. The panel was split two-to-one, but no written opinions were issued.

Following the entry of the arbitrator's award, Super Products returned to the district court with a motion to vacate the award. The district court, in a careful opinion, concluded that the award was valid and enforceable, denied Super Products' motion, and entered an order confirming the award and entering judgment for Flexible.[1] The court began by considering the applicable arbitration law for the dispute (as opposed to the law governing the underlying dispute). After evaluating both the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., and the Wisconsin Arbitration Act, Wis.Stats. § 788.01 et seq., the court concluded that both laws provided for essentially the same type of review of arbitral awards. Both listed very limited and specific grounds upon which a court can vacate an award. The court concluded that the Wisconsin Arbitration Act was not preempted by the FAA, that FAA precedents were persuasive authority for the Wisconsin statute, and that Wisconsin law applied to the case.

On the merits, the court stressed the extremely narrow grounds recognized by the Wisconsin Supreme Court for overturning an arbitration award. In *City of Madison v. Madison Professional Police Officers Association*, 144 Wis.2d 576, 425 N.W.2d 8 (1988), the Wisconsin Supreme Court said that it would "not overturn the arbitrator's decision for mere errors of law or fact, but only when 'perverse misconstruction or positive misconduct [is] plainly established, or if there is a manifest disregard of the law or if the award itself is illegal or violates strong public poli-

---

1. On January 31, 1995, Flexible, having won on the breach of contract claim and not desiring the expense and delay of future litigation, moved for a voluntary dismissal of its remaining claims. The district court granted Flexible's motion in the same order that it denied Super Products' request for modification of the court's order denying Super Products' motion to vacate the arbitration award.

cy.'" 425 N.W.2d at 11 (quoting *Milwaukee Board of School Directors v. Milwaukee Teachers' Education Association*, 93 Wis.2d 415, 287 N.W.2d 131 (1980)). The district court might have added that the Supreme Court of the United States takes an identical approach to the scope of judicial review under the FAA. *Paperworkers Union v. Misco, Inc.*, 484 U.S. 29, 36–38, 108 S.Ct. 364, 369–71, 98 L.Ed.2d 286 (1987); *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953), *overruled on other grounds, Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

Just last Term, the Supreme Court wrote on the general subject of arbitration four times, in *Allied–Bruce Terminix Companies, Inc. v. Dobson*, —— U.S. ——, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, —— U.S. ——, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *First Options of Chicago, Inc. v. Kaplan*, —— U.S. ——, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); and *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, —— U.S. ——, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995). In each of these opinions, the clear message is that bona fide agreements to arbitrate must be respected. Thus, in *Allied–Bruce* the Court held that Congress had exercised its full Commerce Clause power in Section 2 of the FAA, 9 U.S.C. § 2, and it concluded that the FAA therefore prevailed over an Alabama law that was less friendly to arbitration. In *Mastrobuono*, the Court rejected a challenge to an arbitral award that included punitive damages, finding that the parties' choice of New York law extended only to the substance of New York law, not to the procedural rule in New York that forbade arbitrators from making such awards. In *First Options*, the Court concluded that the question "who should have the primary power to decide" whether a dispute is arbitrable or not depends upon what the parties agreed to arbitrate. In the case before it, nothing indicated that the parties had clearly agreed to have the arbitrators decide the arbitrability issue, and thus the Court concluded that the question was for the district court. In passing, the Court distinguished its case from one in which the parties have a contract that provides for arbitration of some issues, and the issue is the scope of the agreement. In the latter circumstance, the rule requiring any doubts concerning the scope of arbitration to be resolved in favor of arbitration comes into play. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983)). Finally, in *Vimar Seguros* the Court turned back a claim that a contract containing a clause requiring arbitration in Tokyo before the Tokyo Maritime Arbitration Commission was invalid because it "lessened" liability under the U.S. Carriage of Goods by Sea Act (COGSA), 46 U.S.C.App. § 1300 et seq. Again distinguishing between matters relating to substance and matters relating to the forum, it found that any procedural difficulties stemming from arbitration did not undermine COGSA liability and that nothing in COGSA prevented the parties from agreeing to enforce those obligations in a particular forum. Any problems about the law applied by the arbitrators could be addressed at the enforcement stage.

This Court has had numerous occasions on which to address the proper approach to review of an arbitral award at the enforcement stage. If there is an agreement to arbitrate, and the issues presented to the arbitrator fell within that agreement, courts may overturn the arbitrator's award only on very narrow grounds. The list in the FAA, § 10, includes the following: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrator(s); (3) the arbitrators were guilty of certain kinds of procedural misconduct; and (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award" was not made. 9 U.S.C. § 10. The language of Wis.Stats. § 788.10, as the district court recognized, is virtually identical. Judge Bauer, writing for this Court recently in *Gingiss International, Inc. v. Bormet*, 58 F.3d 328 (7th Cir.1995), summarized the principles that govern review of an arbitra-

tor's award. "Thinly veiled attempts to obtain appellate review of an arbitrator's decision," he held, are not permitted under the FAA. *Id.* at 333. "Factual or legal errors by arbitrators—even clear or gross errors—do not authorize courts to annul awards.... [I]nsufficiency of the evidence is not a ground for setting aside an arbitration award under the FAA." *Id.* (internal citations omitted).

We faced a similar challenge to an arbitral award in *Widell v. Wolf,* 43 F.3d 1150 (7th Cir.1994), in which we once again held that parties are not entitled to reargue their claims in a proceeding to vacate an arbitral award, citing *Paperworkers Union v. Misco, Inc., supra.* This Court noted that litigation like this defeats the goal of arbitration to provide a quick and cheap decision. 43 F.3d at 1151. *See also National Wrecking Co. v. IBT, Local 731,* 990 F.2d 957, 960 (7th Cir. 1993); *Health Services Management Corp. v. Hughes,* 975 F.2d 1253, 1267 (7th Cir.1992); *Chicago Typographical Union v. Chicago Sun–Times,* 935 F.2d 1501, 1505 (7th Cir. 1991).

■ In the case before us, Super Products rested its hopes on the statutory authority of a court to vacate an arbitrator's award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award on the subject matter submitted was not made." Wis. Stats. § 788.10(1)(d). The district court found, however, that Super Products failed to overcome, with clear and convincing evidence, the presumption of validity that an arbitral award enjoys. It rejected outright Super Products' principal argument, which was that Super Products' own termination of the License Agreement rendered invalid the arbitrator's award of future lost profits for time periods following termination. It was for the arbitrator to decide who breached the agreement first, and what damages were recoverable as a consequence. The panel did so, and that was the end of it.

■ We agree. If courts were to undertake the kind of searching review of arbitral awards that Super Products invites here, arbitration would be transformed from a commercially useful alternative method of dispute resolution into a burdensome additional step on the march through the court system. This is why courts will not overturn an arbitration decision for mere errors of judgment as to law or fact, as the Wisconsin Supreme Court noted in *Madison Professional Police Officers.* The fact that an arbitrator makes a mistake, by erroneously rejecting a valid, or even a dispositive legal defense, does not provide grounds for vacating an award unless the arbitrator deliberately disregarded what she knew to be the law. *See Eljer Mfg. Inc. v. Kowin Development Corp.,* 14 F.3d 1250, 1255 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994) (interpreting the FAA's counterpart to Wis.Stat. § 788.10(1)(d)).

The arguments Super Products tries to raise here all go to its purported termination of the agreement, the legal consequences of that termination, and the amount of damages. These were the points that the arbitration panel was charged with deciding. Super Products itself, it is worth recalling, both entered into a License Agreement that contained an arbitration clause and took the initiative to invoke the arbitral procedure before the district court. This is therefore not a case in which there may not be an agreement to arbitrate between the parties, like *First Option.* This case falls instead into the mainstream of commercial arbitration agreements, which exist precisely because deals or relationships sometimes fall apart and disputes must be resolved somehow. It is worth noting that arbitration is especially useful in international transactions, like this one between an Australian company and an American one, where both sides have the assurance *ex ante* that dispute resolution can take place away from potentially unfamiliar courts and legal systems. *See generally Mitsubishi v. Soler Chrysler–Plymouth,* 473 U.S. 614, 629–31, 105 S.Ct. 3346, 3355–56, 87 L.Ed.2d 444 (1985); *Scherk v. Alberto–Culver,* 417 U.S. 506, 516–17, 94 S.Ct. 2449, 2455–56, 41 L.Ed.2d 270 (1974). The district court correctly applied the law governing review of arbitral awards, and correctly entered judgment on this one.

Last, Flexible has moved for an order finding that this appeal is frivolous and awarding double costs and other damages, pursuant to Fed.R.App.P. 27 and 38. Rule 38 provides that if this Court determines that an appeal is frivolous, this Court "may award just damages and single or double costs to the appellee." Fed.R.App.P. 38. An appeal is frivolous within the meaning of Rule 38, when it "was prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy." *Rosenburg v. Lincoln American Life Insurance Co.*, 883 F.2d 1328, 1340 (7th Cir.1989) (quoting *Reid v. United States*, 715 F.2d 1148, 1155 (7th Cir.1983)). This Court has awarded Rule 38 sanctions in other frivolous appeals seeking to overturn arbitral awards. *Widell*, 43 F.3d at 1152; *Chicago Typographical Union*, 935 F.2d at 1506–07; *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1203 (7th Cir.1987). "The promise of arbitration is spoiled if parties disappointed by its results can delay the conclusion of the proceeding by groundless litigation in the district court followed by groundless appeal to this court; we have said repeatedly that we would punish such tactics and we mean it." *Hill*, 814 F.2d at 1203.

Super Products' appeal had absolutely no prospect of success and has served only to tax the resources of this Court, the district court, and the defendants. Super Products' tactics have cost Flexible more than two years of delay in collecting its arbitration award. We therefore conclude that this is an appropriate case in which to grant Flexible's Rule 38 motion. Flexible shall have fifteen days within which to submit to the Clerk of this Court proper documentation of its expenses in defending this appeal and damages resulting from the delayed receipt of the arbitration award.

The judgment below is AFFIRMED.