In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 12-3387 and 12-3487

CERTCO, INC.,

*Plaintiff-Appellant,*

*Cross-Appellee,*

*v.*

INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
LOCAL UNION NO. 695,

*Defendant-Appellee,*

*Cross-Appellant.*

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 11-cv-258-wmc—**William M. Conley**, *Chief Judge*.

ARGUED APRIL 17, 2013—DECIDED JULY 17, 2013

Before EASTERBROOK, *Chief Judge*, and WOOD and SYKES,
*Circuit Judges*.

EASTERBROOK, *Chief Judge*.  Ten years ago Certco had
one food-distribution warehouse in Madison, Wisconsin.
Today it has four. As the labor force at the new ware-
houses grew, jobs at the original site on Verona Road

dwindled. Certco staffed the three new locations (Helgesen, Femrite, and Daniels) with non-union labor. It paid them more per hour than the union members received and offered a defined-contribution pension plan, saving money compared with the expensive defined-benefit plan that the Teamsters Union sponsors. Local 695 of the Teamsters Union, which represents Certco's warehouse employees, asked an arbitrator to order Certco to return bargaining-unit work to its members. It pointed out that Certco had closed the Verona Road's freezer facility, which used to employ 20 to 25 persons, and built a new freezer at Femrite. Certco maintained that there is not enough room at Verona Road for the larger freezer installed at Femrite, but the union replied that the tasks of moving food into and out of a freezer remain bargaining-unit work, and that there had been a net flow of 15 or so jobs from Verona Road to Femrite even though Certco had expanded some other facilities at Verona Road.

The arbitrator concluded that much of the labor at Certco's two newest warehouses is bargaining-unit work under Article 12 of the collective-bargaining agreement—which, the arbitrator pointed out, covers all of Certco's warehouse labor without limitation to a particular site and forbids the transfer of bargaining-unit work to non-union workers. The arbitrator directed Certco to return to bargaining-unit employees "all work on the transferred freezer products" that had moved to the Femrite warehouse and "work on products that were stored at Verona Road as of July 27, 2009 and transferred to the Daniels facility."

Certco then asked a district judge to deny enforcement. It observed that in 2006 the National Labor Relations Board had decided that federal labor law did not deem the jobs at Helgesen to be "accretions" to the bargaining unit and thus automatically within Local 695's jurisdiction. *Certco Distribution Centers*, 346 N.L.R.B. 1214 (2006). Moreover, Certco asserted, in 2010 the Board had made the same decision about Femrite. An arbitrator cannot contradict the Board's decisions, see *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261 (1964), and Certco asserted that the Union's grievance therefore was not arbitrable.

The district court concluded, however, that the dispute was arbitrable and enforced the award, as the Union had requested by a counterclaim—though the judge stayed that decision pending the outcome of this appeal. The judge wrote that accretion presents questions of federal law and labor policy within the Board's domain, subjects that trump contracts, while the arbitrator had addressed a different topic: the meaning and effect of Article 12 in a particular CBA. If Certco wants to employ non-union labor to perform the same jobs Local 695's members had been doing at Verona Road, it has only to negotiate different language in the next collective-bargaining agreement.

What the NLRB concluded in 2006 is that work at the Helgesen facility did not accrete to Local 695, as a matter of federal law under §8(a)(5) of the National Labor Relations Act, 29 U.S.C. §158(a)(5). The administrative law judge, whose decision on this issue the Board adopted, concluded that, although the staff at the Helgesen warehouse was doing the same kind of work as the staff

at Verona Road, the General Counsel had not shown that the employees at Helgesen supported the Teamsters Union or otherwise met the Board's requirements for accretion under §8(a)(5).

In reaching this conclusion, the ALJ observed that "[t]he determination of questions of representation, accretion, and appropriate unit do not depend upon contract interpretation but involve the application of statutory policy, standards, and criteria. These are matters for decision of the Board rather than an arbitrator" (346 N.L.R.B. at 1224, quoting from *Marion Power Shovel Co.*, 230 N.L.R.B. 576, 577–78 (1977)). See also *Litton Financial Printing Division of Litton Business Systems, Inc. v. NLRB*, 501 U.S. 190 (1991). The arbitrator, and later the district judge, made precisely this point when concluding that the Board had not resolved any question about Article 12 of the CBA, which remained open to consideration in arbitration.

Article 12(1), a standard work-assignment clause, provides that Certco "shall not direct or require its employees or persons other than the employee in the bargaining units here involved, to perform work which is recognized as the work of the employees in said units." The arbitrator decided that the freezer work moved from Verona Road to Femrite, and some of the work moved from Verona Road to Daniels, had been "recognized as the work of the employees in said units" and therefore could be moved only with the Union's agreement. By contrast, new work that had never been done at Verona Road is not covered by the award, and Certco can assign it as it pleases.

The Board's ruling in 2006 had nothing to do with the parties' collective-bargaining agreement and therefore did not affect the arbitrability of a dispute about the meaning of Article 12(1). That's equally true about the decision in 2010 that workers at Femrite did not accrete to the bargaining unit under §8(a)(5).

And there's a further reason why the 2010 decision does not affect arbitration: it was not the Board's. After Femrite opened, the Union charged Certco with unfair labor practices. The Union made two arguments: that Certco had refused to bargain over the move and had discriminated against the Union's members by refusing to hire any at Femrite. The Board's regional attorney declined to issue a complaint. The Union appealed to the General Counsel, who likewise declined to issue a complaint. The General Counsel told the Union that bargaining is not required when physical constraints such as space, rather than economic issues, lead to a transfer of work, and that there had not been any discrimination since none of the Union's members applied for a job at Femrite. These decisions not only are unrelated to the arbitrability of a claim under Article 12 but also are not by the Board. The General Counsel, not the Board, decides whether to issue a complaint, and the General Counsel's exercise of prosecutorial discretion lacks legal effect. See, e.g., *NLRB v. Food Workers Union*, 484 U.S. 112, 126 (1987); *Miller Brewing Co. v. Brewery Workers*, 739 F.2d 1159, 1166 (7th Cir. 1984). The General Counsel's analysis can be helpful when a court must decide whether a dispute is within the Act's scope, see *Hanna Mining Co. v. Marine Engineers*, 382 U.S. 181, 192 (1965), but failure to issue a com-

plaint is not equivalent to a decision by the Board on the merits.

Certco tells us that *Yellow Freight System, Inc. v. Automobile Mechanics*, 684 F.2d 526 (7th Cir. 1982), gives legal force to a regional decision not to issue a complaint. We do not understand the opinion so. The regional director (an official different from the regional attorney) ordered an election to be held so that employees could decide whether they wanted to be represented by a union. The regional director acts as the Board's agent for the purpose of holding and monitoring elections. *Yellow Freight* concludes that, once the Board has prescribed an election, an arbitrator cannot make a decision that would foreclose that election. Arbitrators cannot override decisions by federal agencies. That eminently sound conclusion has nothing to do with the General Counsel's decision *not* to issue a complaint (which leaves no decision by the Board)—and at all events our case does not concern elections.

As we have explained, even the Board's actual decision in 2006 is compatible with the arbitrator's interpretation of Article 12(1) in this CBA. Certco treats the arbitrator's decision as requiring it to recognize the Union as the representative of workers at Femrite and Daniels, but what the arbitrator actually ordered is that the work formerly done at Verona Road be returned there (where the Union already is the exclusive bargaining representative), or be performed by bargaining-unit members, unless the Union agrees to modify Article 12(1). Certco may find compliance expensive, but the costs of keeping one's promise do not excuse performance.

No more need be said about Certco's appeal. The Union's cross-appeal asks us to reverse the district court's decision denying its motion for attorneys' fees as sanctions. There is a presumption in favor of sanctions when the losing side in arbitration asks a judge to disagree with the award. See, e.g., *Continental Can Co. v. Chicago Truck Drivers Pension Fund*, 921 F.2d 126 (7th Cir. 1990). The rationale for that presumption is that the parties have agreed to resolve their dispute in one forum, and the costs of moving the dispute to a second forum should be borne by the person who initiates the new round. Certco, unlike the loser in *Continental Can* and similar cases, does not ask us to disagree with the arbitrator's decision. Instead it contends that the dispute was not arbitrable. Arbitrability is a question for the court. See, e.g., *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986). The American Rule, under which each side bears its own fees, governs disputes about arbitrability unless an exception applies. The Union does not contend that any statute authorizes fee shifting, and although it does contend that Certco's position is frivolous the district judge thought that it escapes that epithet—weak, maybe, but not frivolous. Appellate review of such a decision is deferential, see *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399–405 (1990), and we conclude that the district judge did not abuse his discretion in deciding that Certco's arguments are not frivolous.

AFFIRMED