HOTEL ASSOCIATION OF
WASHINGTON, D.C., INC.,
et al., Appellants,

v.

HOTEL & RESTAURANT EMPLOYEES
UNION, LOCAL 25, AFL–CIO, et al.,
Appellees.

No. 91–5112.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 14, 1992.

Decided April 28, 1992.

Peter Chatilovicz, with whom Anita Barondes, Washington, D.C., was on the brief, for appellants.

Mady Gilson, with whom Jeffrey Freund, Washington, D.C., was on the brief, for appellees.

Before WALD, WILLIAMS, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

A dispute arising under the collective bargaining agreement (CBA) between the Hotel Association of Washington, D.C., Inc. (Employer) and the Hotel and Restaurant Employees, Local 25, AFL–CIO (Union) may be resolved ultimately by an arbitrator selected on a rotating basis from a permanent panel of five. The Employer brought this suit in an effort to vacate the decision of one such arbitrator because he declined to follow the earlier decision of another arbitrator who had resolved the same issue. We agree with the Union, as did the district court, that because the later decision drew its essence from the parties' CBA, notwithstanding the conflict with the earlier decision, it must be enforced.

I. BACKGROUND

In 1986 the Union filed a grievance claiming that a bellman hired to fill a part-time position at one of the Employer hotels was

entitled to premium pay under the "time and one-third clause" of the CBA, which applies to certain employees "who at the request of the Employer work less than five full days" per week. In due course, the grievance was presented to Arbitrator Alexander Porter, who concluded that the CBA did not require a hotel to pay premium wages to an employee hired to fill a part-time position. "[I]t stretches language and the realities of the employment relationship too far," he wrote, to say that one "who accepts a part-time job is an 'employee' working less than five days 'at the request of the Employer.' "

In 1988 the Union filed a second grievance claiming that a food service employee hired to fill a part-time position at another hotel was entitled to premium pay under the time and one-third clause. When this grievance had been referred to Arbitrator Millard Cass, the Employer moved to dismiss, noting that the grievance involved the same parties and the identical issue as had the Porter award, and arguing against its relitigation for the same reasons that underlie the doctrines of res judicata and collateral estoppel. Arbitrator Cass denied the motion; although he said he would consider the previous arbitral decision, in his view he was not obliged to follow it if he disagreed with the reasoning upon which it was based.

At arbitration, the Union argued that it was not precluded from relitigating an issue previously arbitrated. Arbitrator Cass agreed, stating that "no Arbitrator should issue a decision that is contrary to his own judgment on the law or his own sense of justice." Arbitrator Cass then proceeded to interpret the time and one-third clause, contrary to the Porter award, to require that the Employer pay premium wages to a covered employee hired on a part-time basis.

The Employer sued in district court to vacate the Cass award on the ground that it did not "draw[ ] its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *see also Unit-* ed Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The district court concluded that the extent to which an arbitrator is bound by a prior arbitral decision is itself a proper subject for the arbitrator. Finding only that the Cass award "draws its essence" from the CBA, therefore, the court granted the Union's motion for summary judgment and ordered the Employer to comply with the Cass award.

## II. ANALYSIS

In order to promote the settlement of labor disputes through negotiated procedures, judicial review of arbitral decisions is confined within exceedingly narrow bounds. Neither a disagreement with the arbitrator's findings of fact nor a difference of opinion about the correct interpretation of the contract is an occasion for judicial intervention.

> [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 367, 98 L.Ed.2d 286 (1987).

In recognition of our limited role, the Employer does not argue the merits of the Cass award. Instead, it argues only that Arbitrator Cass should have followed Arbitrator Porter's lead in resolving the contract issue that came before each of them in turn. In the present context, therefore, our inquiry is limited to determining whether any provision of, or established practice under, the CBA clearly conferred controlling effect upon Arbitrator Porter's prior award.

*First.* The Employer claims "[i]t is a fundamental principle of arbitration law that when a prior arbitrator has rendered an award in a dispute involving the same parties, the same contract provision of the same Agreement and the same issue, the prior award has precedential force akin to

the principle of judicial *res judicata.*" By "fundamental," we suppose the Employer means that the parties need not include any specific provision in their CBA in order to make the principle applicable. That is not at all how we read the background law.

■ The truly fundamental principle is that "[b]ecause the authority of arbitrators is a subject of collective bargaining, ... the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator." *W.R. Grace & Co. v. Local Union 759, Int'l Union of Rubber Workers,* 461 U.S. 757, 765, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). It follows that the extent to which an arbitrator is bound by the decision of a predecessor can be determined only by reference to the agreement as a whole. *See, e.g., Production and Maintenance Employees' Local 504 v. Roadmaster Corp.,* 916 F.2d 1161, 1162–63 (7th Cir.1990) ("[w]hether more than one arbitrator can take a crack at interpreting the contract is itself a question of contractual interpretation"). As we have noted before, where the agreement is silent, the "arbitrator may decline to follow arbitral precedent when his judgment is that earlier decisions are erroneous." *Fournelle v. NLRB,* 670 F.2d 331, 344 n. 22 (D.C.Cir. 1982) ("[j]ust as ... the evolution of the common law may require a court to hold that earlier cases were in error"); *see also International Bhd. of Elec. Workers, Local No. 199 v. United Tel. Co.,* 738 F.2d 1564, 1571 (11th Cir.1984); *Courier–Citizen Co. v. Boston Electrotypers Union No. 11,* 702 F.2d 273, 280 (1st Cir.1983); *Little Six Corp. v. United Mine Workers of America, Local No. 8332,* 701 F.2d 26, 29 (4th Cir.1983); *Butler Armco Indep. Union v. Armco Inc.,* 701 F.2d 253, 255 (3d Cir.1983); *New Orleans S.S. Ass'n v. General Longshore Workers,* 626 F.2d 455, 468 (5th Cir.1980).

*Second.* Of course, the parties may make an arbitral decision binding in a future dispute by so providing in their CBA. *See, e.g., Roadmaster,* 916 F.2d at 1162–63. Hence does the Employer point to the CBA provision for "final and binding arbitra-tion." Citing our decision in *Chambers v. Local Union No. 639,* 578 F.2d 375 (D.C.Cir.1978), the Employer argues that when arbitration is specifically made "final and binding, the arbitration decision becomes a term of the agreement and subsequent arbitrators must apply it as such."

*Chambers* is not controlling here, however. In that case, grieving union members were seeking in a second arbitration to enforce a prior arbitral award in their favor. In the second arbitration, their union took a position contrary to the grievants' interest, successfully urging the arbitrator to overrule the first decision. The grievants filed suit to enforce the first award. Interpreting the first decision, not the contract, we held that "[t]o whatever extent the decision on the second grievance attempted to reopen the ... question settled by the [first] decision, it was void and was not itself entitled to any final and binding effect because [the first decision was final]." 578 F.2d at 380.

In the present case, Arbitrator Cass did not purport to reopen Arbitrator Porter's earlier decision. Cass simply held that the Porter decision did not control the resolution of a subsequent like case. The grievant before Arbitrator Porter was not denied the fruits of his victory. *Chambers* is inapposite, therefore, to the Employer's proposed interpretation of the "final and binding" clause. That interpretation is plausible, to be sure, but it is not so compelling as to preclude Arbitrator Cass' equally plausible determination that the CBA as a whole requires him only to consider, not necessarily to follow, a prior award in making his own decision.

■ The Employer further complains that Arbitrator Cass "cavalierly ignored" the final and binding provision of the CBA. The "final and binding" clause does not so unequivocally import the principle of precedent into arbitral decisionmaking that Arbitrator Cass was obliged expressly to consider it lest his decision fail to draw its essence from the contract. *See Misco,* 484 U.S. at 38, 108 S.Ct. at 367 ("arbitrator may not ignore the plain language of the contract; but [neither should a court] reject

an award on the ground that the arbitrator misread the contract."); *Fournelle,* 670 F.2d at 342 n. 20.

*Third.* The Employer claims that because "[t]he Porter Award interpreted the contract's language [it] became embodied in the contract itself" and therefore "was immune from alteration or amendment by Arbitrator Cass in a subsequent arbitration." In addition to being rather metaphysical—which is perhaps to be expected in an area where the Supreme Court has made essence-drawing the standard—this claim is more a restatement of the Employer's desired conclusion than a distinct argument. To say that an interpretation of an agreement becomes an inalterable part of that agreement is simply to describe the mechanism by which a prior decision controls a later one—if it does. As we have already seen, however, the question whether a prior arbitral decision binds a subsequent arbitrator can be determined only by reference to the agreement itself. It falls to the second arbitrator, therefore, to answer that question in the first instance.

*Fourth.* The Employer maintains that we must vacate the Cass award in furtherance of a "national labor policy favoring the final resolution of labor disputes," because finality requires "consistency in the interpretation of [a CBA]." To the extent that there is such a policy and it is judicially cognizable, however, we do not think it precludes the parties from agreeing to an arbitration system in which different arbitrators may be asked to resolve the same interpretive question and there is no provision for binding them to follow precedent.

If the Employer is unhappy with the present CBA, it can bargain over changing it—to make provision for a system of precedent, or to use a single arbitrator, or otherwise. It may not expect this court, however, to serve as the *deus ex machina* that delivers it from the consequences of that present agreement. Accordingly, the judgment of the district court is

*Affirmed.*