**AMERICAN POSTAL WORKERS UNION, AFL–CIO, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE Defendant.**

No. CIV.A. 04–00424RCL.

United States District Court, District of Columbia.

March 30, 2005.

---

**286**

Melinda Kim Holmes, Brenda Catherine Zwack, O'Donnell, Schwartz & Anderson, P.C., Washington, DC, for Plaintiff.

Marina Utgoff Braswell, US Attorney's Office for the District of Columbia, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

LAMBERTH, District Judge.

This matter comes before the Court on defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment. FED. R. CIV.P. 56(c). Plaintiff's cause of action arises out of an alleged breach of a collective bargaining agreement. Plaintiff asserts a claim pursuant to 39 U.S.C. § 1208(b), the Postal Reorganization Act, which states that "[s]uits for violation of contracts between the Postal Service and a labor organization representing the Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy." Plaintiff asserts that the arbitrator exceeded her authority in granting a default judgment, did not draw from the essence of the collective bargaining agreement and acted arbitrarily and capriciously. Defendant disputes these claims, arguing that the arbitrator made an authorized, procedural decision within her discretion which drew from the essence of the collective bargaining agreement.

Defendant submitted a motion and memorandum in support of its position. Plaintiff subsequently filed an opposition to plaintiff's motion for summary judgment and a cross-motion for summary judgment. Defendant and plaintiff filed reply briefs, respectively. Upon consideration of the parties' filings, the applicable law, the Federal Rules of Civil Procedure and the facts of this case, the Court finds that the defendants' motion for summary judgment will be GRANTED. Plaintiff's cross-motion for summary judgment will be DENIED.

## I. BACKGROUND

The Collective Bargaining Agreement between American Postal Workers Union, AFL–CIO, and U.S. Postal Service ("Agreement") governs the parties' grievance and arbitration procedure. (Compl. at ¶¶ 6,7). The Agreement covers a variety of employment disputes through each of the stages of resolution, including a final and binding arbitration. (Compl. at ¶¶ 6, 7). Article 15 of the Agreement outlines general provisions of an arbitration. (Agreement, at 103). According to Section 15.5.A.6, "[a]ll decisions of arbitrators will be final and binding. All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator." (Agreement, at 103). Furthermore, Article 16 on Discipline Procedure states that "[n]o employee may be disciplined or discharged except for just cause ...." (Agreement, at 109).

The dispute between the parties began when Denise Flannery underwent surgery for a brain aneurism and requested leave under the Family Medical Leave Act. (Hoffman Dec. at ¶ 3). The Postal Service denied Flannery's request for leave, and on February 1, 2003, issued a Letter of Warning charging Flannery with "Failing to Be Regular in Attendance." (Letter of Warning, at 2). The APWU filed a grievance on Flannery's behalf, claiming that the Letter of Warning was without "just cause." (Compl. at ¶¶ 8, 9). The parties were unable to resolve this dispute through the initial steps of the grievance procedure, so they submitted it to arbitration. (Compl. at ¶¶ 8, 9). The parties agreed that Arbitrator Marjorie H. O'Reilly would be the arbitrator and that the hearing would take place on November 18, 2003. (Compl. at ¶¶ 10, 11).

At the November 18 hearing, Scott Hoffman was the advocate for the APWU and James Ryan was the advocate for the Postal Service. (Hoffman Dec. at ¶ 5). As the arbitration hearing began, Ryan learned that Flannery would not be attending the arbitration and that the APWU did not intend to call her as a witness. (Decl. of Ryan, at ¶ 4). Hoffman asserted that his case was almost entirely procedural and Flannery's testimony was not necessary for his case. (Hoffman Dec. at ¶ 8). Accordingly, Ryan informed Hoffman that if he could not cross-examine Flannery, Ryan intended to call her as a witness. *Id.* at ¶ 5. The APWU stated that the grievant was presently unable to participate in the arbitration hearing, either in person or by phone, for medical reasons. *Id.* at ¶ 6. Arbitrator O'Reilly then postponed the hearing, giving the APWU fourteen days to produce medical evidence showing that Flannery was unable to participate in the hearing in person or by telephone. (Award, at 1). She also requested that the APWU provide her with a date by which Flannery would be able to participate in the hearing. (Award, at 1).

The APWU never produced the medical evidence or a potential date when Flannery could participate in the hearing. (Award, at 1). The APWU gave no reason for its failure to do so. Arbitrator O'Reilly then issued a default judgment for the Postal Service, denying the APWU's grievance on the ground that the APWU did not comply with her order. (Compl. at ¶ 14).

## II. ANALYSIS

### A. Summary Judgment

■ Summary judgment is appropriate when "there is no genuine issue as to any material fact." Fed. R. Civ.P. 56(c); *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A fact is material if it will affect the outcome of the case. *Id.* Moreover, a moving party is entitled to summary judgment as a matter of law when the law supports the moving party's position. *See Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 594 (11th Cir.1995). Inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■ Once the moving party files a proper summary judgment motion, the burden shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The non-moving party cannot establish a genuine issue of material fact exists through "conclusory allegations" or "unsubstantiated assertions." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). Any factual assertions contained in the declaration in support of a motion will be accepted by the Court as true unless plaintiff submits his own declarations or other documentary evidence contradicting the assertions in the attached declarations. *See Neal v. Kelly,* 963 F.2d 453, 456 (D.C.Cir.1992).

## B. Standard of Review

■ The standard of review for arbitration decisions is abuse of discretion. *Sanders v. Washington Metro. Area Transit Auth.,* 819 F.2d 1151, 1157 (D.C.Cir.1987). Therefore, "the courts have a very circumscribed role to play." *American Postal Workers Union, AFL–CIO v. United States Postal Service,* 789 F.2d 1, 4 (D.C.Cir.1986). *See also Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001); *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 567, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v.* *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Hotel Assoc. of Washington, D.C., Inc. v. Hotel & Restaurant Employees Union,* 963 F.2d 388, 389 (D.C.Cir.1992); *Kanuth v. Prescott, Ball & Turben, Inc.,* 949 F.2d 1175, 1178 (D.C.Cir.1991).

■ To abandon this highly deferential standard, "[t]he case must present some egregious deviation from the norm." *Office & Prof'l Employees Int'l Union, Local 2, v. Washington Metro. Area Transit Auth.,* 724 F.2d 133, 137 (D.C.Cir. 1983). The rationale for such deference arises from the parties' mutual intent to be bound to the outcome of arbitration through a collective bargaining agreement. Thus, as long as the arbitrator's decision "draw[s] its essence from the collective bargaining agreement," a court is not entitled to review the decision on the merits, even when the arbitrator's decision appears to be "ambiguous." *W.R. Grace & Co. v. Local Union 759, International Union of United Rubber Cork, Linoleum and Plastic Workers,* 461 U.S. 757, 759, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) (citing *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). Only when an arbitrator "dispense[s] his own brand of industrial justice" may a court find her decision unenforceable. *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

■ Judicial deference is even greater for procedural decisions. *See John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). The Supreme Court has stated that "[o]nce it is determined ... that the parties are obligated to submit the subject matter of a

dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Id.* at 557, 84 S.Ct. 909. If such procedural deference was not given to arbitrators, "[r]eservation of 'procedural' issues for the courts would ... not only create the difficult task of separating related issues, but would also produce frequent duplication of effort." *Id.* at 558, 84 S.Ct. 909.

■ Procedural questions include "whether grievance procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate." *Id.* Procedural question have further been defined by the courts as involving time limitations, waiver, and timeliness of filings. *Washington–Baltimore Newspaper Guild, Local 35 v. Washington Post,* 959 F.2d 288, 291 (D.C.Cir.1992); *McKesson Corp. v. Local 150 IBT,* 969 F.2d 831, 834 (9th Cir.1992); *Beer, Soft Drink, Water, Fruit Juice, Carbonic Gas, Liquor Sales Drivers et al., Local Union No. 744 v. Metro. Distrib. Inc.,* 763 F.2d 300, 303 (7th Cir.1985).

## C. The Arbitrator Acted within Her Authority under the Collective Bargaining Agreement in Granting a Default Judgment

It is well-established that a highly deferential standard applies to arbitration decisions, unless the arbitrator's action are an "egregious deviation from the norm." *Office & Prof'l Employees Int'l Union, Local 2 v. Washington Metro. Area Transit Auth.,* 724 F.2d 133, 137 (D.C.Cir.1983). Moreover, it is equally well-established that courts are even more deferential regarding procedural decisions. *See John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). This conclusion is further supported in *National Football League Play-*ers Assoc. v. Office and Prof. Employees Intern. Union, Local 2,* 947 F.Supp. 540, 545 (D.D.C.1996), where this Court held that an arbitrator's refusal to postpone the arbitration was a procedural motion requiring judicial deference. *National Football League Players Assoc. v. Office and Prof. Employees Intern. Union, Local 2,* 947 F.Supp. 540, 545 (D.D.C.1996). As in *National Football League Players Assoc.,* the Court also defers to the procedural judgment to Arbitrator O'Reilly in this case.

■ Here, O'Reilly clearly instructed the APWU to provide medical documentation to support their claim that grievant Flannery could not participate in the arbitration hearing either in person or by phone, as well as to supply her with a potential date by which Flannery could participate. (Award, at 1). Arbitrator O'Reilly also provided a clear deadline of fourteen days to provide such information. *Id.* These instructions are clearly procedural, as no record of fact was yet established through the arbitration process when Arbitrator O'Reilly issued the default award. (Award, at 1). Nothing about the Arbitrator's actions raises a red flag in terms of egregious behavior; in fact, her actions were quite justifiable.

The APWU argues that Arbitrator O'Reilly's decision violated the grievant's right to a "fundamentally fair hearing." *International Technologies Integration, Inc. v. Palestine Liberation Organization,* 66 F.Supp.2d 3, 10 (D.D.C.1999). Further, the APWU claims that deference to the arbitrator's award would be condoning a use of "procedural authority to deny the parties due process in the form of a full and fair hearing." (Pl. Opp. and Cr. Motion for S.J., at 8). But the issue here is procedural, not substantive. After Arbitrator O'Reilly's instruction, the APWU did not supply any of the information re-

quested, nor did they provide any reason whatsoever for their omission. (Award, at 1). In fact, the reason why the grievant did not receive a hearing was because neither she nor the APWU ever responded to these preliminary procedural matters. *Id.* While parties certainly have a right to due process and to a fundamentally fair hearing, this does not give the parties the right to disobey a procedural order of an arbitrator and then claim that they were treated unfairly because a default judgment is issued.

**D. The Arbitrator's Procedural Decision Properly Drew from the Essence of the Contract between the Parties**

The parties' collective bargaining agreement does not specifically address procedural decisions that can or cannot be made by an arbitrator. The Agreement merely states that an arbitrator's decision is "final and binding, and that "[n]o employee may be disciplined or discharged except for just cause ...."" (Agreement, at 103, 109). While the arbitrator is specifically prohibited from altering the Agreement in any way under Article 15.5.A.6, she also maintains considerable discretion to deal with procedural matters. *See John Wiley & Sons, Inc., v. Livingston,* 376 U.S. 543, 557–558, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

■ Arbitrator O'Reilly's procedural decision to enter a default judgment did not conflict with the contractual requirement to establish just cause. In this case, the grievant was disciplined for failure to report to work for a span of several days. (Letter of Warning, at 2). These absences initially created "just cause" by the Postal Service to issue the grievance. Under the Agreement, Flannery is entitled to "the grievance-arbitration procedure provided for in this Agreement...." which she received. (Agreement, at 110). There is no question that an arbitration was promptly scheduled, and that the hearing began on November 18, 2003. Yet, because of Flannery's absence, the Arbitrator determined that the arbitration should be postponed so that the Postal Service could have the opportunity to question Flannery during the proceedings. (Award, at 1). The decision not to respond to the Arbitrator's order was entirely that of the APWU. Through non-compliance, the grievant and the APWU effectively halted the arbitration proceeding to which they were entitled. It would be unjust to now re-arbitrate this matter to the benefit of the party who was responsible for ending the initial arbitration through non-compliance with the Arbitrator's order. Therefore, the Arbitrator's decision drew properly from the Agreement between the parties, and her decision to dismiss grievant's complaint is affirmed.

**E. The arbitrator did not act arbitrarily and capriciously.**

■ Plaintiff's final assertion that Arbitrator O'Reilly's decision was arbitrary and capricious is without merit. However, plaintiff does not provide authority for this assertion, nor provides any argument on this issue in either of plaintiff's briefs. While 9 U.S.C. § 10(a) outlines cases in which a United States District Court may vacate an arbitration award, the arbitrary and capricious standard is not included in any of the provisions.

### III. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED. Plaintiff's cross-motion for summary judgment is DENIED.